IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

| | |
|---|---|
| ASHLYNN BARD, ANDREW LIPFORD, NIKOLAS MELENDEZ, DINA NATERO, KAGNI PATTON, KAYLEIGH ROGERS, and DONNA STEPHENS<br><br>PLAINTIFFS,<br><br>v.<br><br>H&J RESTAURANTS, LLC d/b/a TOKYO HIBACHI, HYUN LEE, and JENNY LEE,<br><br>DEFENDANTS. | CASE NO.: 5:21-cv-3-TBR |

## COMPLAINT

1. Plaintiffs, Ashlynn Bard, Andrew Lipford, Nikolas Melendez, Dina Natero, Kagni Patton, Kayleigh Rogers, and Donna Stephens bring this action against Defendants, H&J Restaurants, LLC d/b/a Tokyo Hibachi, Hyun Lee, and Jenny Lee ("Defendants") to recover unpaid minimum and overtime wages, liquidated damages, attorneys' fees, and costs under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201m *et seq.*

2. Plaintiffs, Ashlynn Bard, Andrew Lipford, Nikolas Melendez, Dina Natero, Kagni Patton, Kayleigh Rogers, and Donna Stephens also bring this action against Defendants to recover unpaid minimum and overtime wages, liquidated damages, attorneys' fees, and costs under the Kentucky Wages and Hours Act ("KWHA"), KRS 337.010 *et seq.* Plaintiffs further request that the Court impose civil penalties upon Defendants, pursuant to KRS 337.990(1), (5), and (7), for: failing to maintain accurate employment records (in violation of KRS

1

337.320), illegally requiring their employees to remit portions of their tips to non-tip producing employees (in violation of KRS 337.065); failing to timely pay Plaintiffs as required by the KWHA (in violation of KRS 337.020); and failing to pay the required minimum wage (pursuant to KRS 337.275) and overtime wage (pursuant to KRS 337.285).

## I. JURISDICTION AND VENUE

3. This Court has jurisdiction over Plaintiffs' claims under the FLSA because they are brought pursuant to 29 U.S.C. § 216(b) and because they raise a federal question pursuant to 28 U.S.C. § 1331.

4. This Court has jurisdiction over Plaintiffs' supplemental law clams pursuant to 28 U.S. C. § 1331.

5. Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants reside in this judicial district and because the claims arose in this judicial district.

## II. PARTIES

**A.     Plaintiffs**

6. Ashlynn Bard is over the age of nineteen (19) and is a resident of Paducah, McCracken County, Kentucky. Plaintiff Bard has been employed by Defendants as a server since 2016.

7. Andrew Lipford is over the age of nineteen (19) and is a resident of Paducah, McCracken County, Kentucky. Plaintiff Lipford has been employed by Defendants as a server since 2009 to 2016.

8. Nikolas Melendez is over the age of nineteen (19) and is a resident of Paducah, McCracken County, Kentucky. Plaintiff Melendez has been employed by Defendants as a cook since 2012 to 2016.

9. Plaintiff Dina Natero is over the age of nineteen (19) and is a resident of Paducah, McCracken County, Kentucky. Plaintiff Natero has been employed by Defendants

as a server since 2014.

10. Kagni Patton is over the age of nineteen (19) and is a resident of Paducah, McCracken County, Kentucky. Plaintiff Patton has been employed by Defendants as a server since 2013 to 2017.

11. Kayleigh Rogers is over the age of nineteen (19) and is a resident of Paducah, McCracken County, Kentucky. Plaintiff Rogers has been employed by Defendants as a server since 2014.

12. Donna Stephens is over the age of nineteen (19) and is a resident of Paducah, McCracken County, Kentucky. Plaintiff Stephens has been employed by Defendants as a server since 2013 to 2016.

**B.    Defendants**

13. Defendant H&J Restaurants, LLC is a Kentucky company doing business within this judicial district.

14. Defendant H&J Restaurants, LLC is headquartered at 3535 James Sanders Boulevard, Paducah, Kentucky 42001. Defendant H&J Restaurants, LLC's registered agent is Jenny J. Lee, who can be served at 3810 Bethel Church Road, Kevil, Kentucky 42053.

15. Defendant H&J Restaurants, LLC employs individuals who are engaged in interstate commerce and/or in the production of goods for interstate commerce.

16. Defendant H&J Restaurants, LLC has at all relevant times been an employer within the meaning of FLSA and KWHA.

17. Defendant Hyun Lee is a resident of Ballard County, Kentucky.

18. Defendant Jenny Lee is a resident of Ballard County, Kentucky.

19. Defendants Hyun Lee and Jenny Lee (the "Individual Defendants) have at all relevant times been the sole members of Defendant H&J Restaurants, LLC.

20. The Individual Defendants have at all relevant times owned and operated

Defendant H&J Restaurants, LLC.

21. The Individual Defendants have at all relevant times been responsible for developing, overseeing, and implementing Defendant H&J Restaurants, LLC's payroll policies, including policies related to tips.

22. The Individual Defendants have at all relevant times managed Defendant H&J Restaurants, LLC and Tokyo Hibachi restaurant employees.

23. The Individual Defendants have at all relevant times been employers within the meaning of FLSA and KWHA.

### III. FACTS

24. Plaintiffs were employed as servers for Defendants at their Tokyo Hibachi restaurant ("Tokyo Hibachi") in Paducah, Kentucky.

25. Plaintiffs were employed by Defendants as servers at Tokyo Hibachi from 2009 to 2016.

26. Defendants paid Plaintiffs and other servers of Tokyo Hibachi an hourly wage below $7.25. For example, Defendants paid Plaintiffs an hourly wage of approximately $2.15.

27. In seeking to comply with the FLSA and KWHA mandate that employees receive a minimum wage of $7.25 per hour, Defendants purported to utilize a "tip credit" for each hour worked by Plaintiffs and other servers at the Defendants' restaurant. *See* 29 U.S.C. § 203(m) and KRS 337.275(2). For example, the "tip credit" for Plaintiffs was $5.10 for each hour worked.

28. Defendants required Plaintiffs and other servers to contribute a portion of their tips to employees who managed and supervised servers.

29. For example, Defendants required Plaintiffs and other servers to contribute a portion of their tips to Chefs.

33. Chefs were paid a salary, classified as exempt, and functioned as managers

or supervisors of servers and other employees.

30. Defendants also required Plaintiffs and other servers to contribute a portion of their tips to employees who do not receive tips directly from customers, including employees who worked in the positions of Busboy and Bartender.

31. Remitting tips to Busboys, Chefs, and Bartenders was not voluntary. Rather, it was a condition of employment and, therefore, mandatory.

32. Defendants' Busboys, Chefs, and Bartenders do not receive tips directly from customers because these positions generally work in or near the kitchen area and do not interact with restaurant customers.

33. A Busboy's job primarily consists of clearing silverware and dishes used by the restaurant's patrons from tables.

34. A Bartender's job primarily consists of preparing alcoholic drink orders given to them by the servers after being ordered by the restaurant's patrons.

35. When Plaintiffs and other servers did not earn enough in tips to amount to earning $7.25 per hour, Defendants did not pay them any more than their tipped hourly rate. This occurred on a regular basis because of the large number of hours Defendants required Plaintiffs to work. As a result, Plaintiffs worked many weeks without earning the required hourly minimum wage.

36. Defendants required Plaintiffs and other servers to clock-out prior to the conclusion of their shift. In the time after clocking out, Plaintiffs and other servers performed non-tip producing work, including, for example, taking out the trash, wiping down tables, and distributing the tip pool among restaurant employees. Defendants expected and required Plaintiffs and other servers to clock out in order to perform these and other non-tip producing work activities.

37. Defendants maintained a policy at their restaurant of requiring Plaintiffs and

other servers to spend more than 20% of their time performing non-tip producing work. Such non-tip producing work included, but was not limited to, taking out the trash, wiping down tables, rolling silverware, scrubbing chairs, cleaning bathrooms, sweeping, mopping, scrubbing floors, cleaning dishes, and vacuuming.

38. When Plaintiffs and other servers worked in excess of 40 hours in a workweek, they were paid a tipped hourly rate lower than $10.88 per hour (one and one-half times the statutory minimum wage under the FLSA and KWHA).

39. The maximum hourly tip credit permitted on overtime hours is $5.12. As a result, the minimum tipped hourly rate permitted under the FLSA and KWHA is $5.76 per hour ($10.88 - $5.12 = $5.76).

40. Defendants paid an amount lower than $5.76 per hour for overtime hours. For example, Defendants typically paid servers $3.23 per overtime hour (or one and one-half times the $2.15 hourly rate they typically paid servers).

41. Defendants' pay practices have been investigated on at least two occasions by government agencies.

42. In or around 2016, the United States Department of Labor investigated Defendants' pay practices for employees of Tokyo Hibachi.

43. As a result of this 2016 investigation, the United States Department of Labor determined that Defendants had violated the overtime provisions of the FLSA.

44. In or around 2018, the United States Department of Labor and/or the Kentucky Labor Cabinet investigated Defendants' pay practices for employees of Tokyo Hibachi in response to an employee complaint about Defendants' tip share.

45. Thus, Defendants knew or should have known that their pay practices for servers violated the FLSA and KWHA.

46. Defendants reckless, intentional, outrageous, willful, and wanton conduct was the proximate cause of the Plaintiffs' damages and such conduct warrants the imposition of punitive damages.

### IV. CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE MINIMUM WAGE REQUIREMENTS OF THE FLSA

47. All previous paragraphs are incorporated as though fully set forth herein.

48. Plaintiffs are employees entitled to the FLSA's protections

49. Defendants are employers covered by the FLSA.

50. The FLSA entitles employees to a minimum hourly wage of $7.25 for every hour worked. 29 U.S.C. § 206(a).

51. While restaurants may utilize a "tip credit" to satisfy their minimum wage obligations to tipped employees, they forfeit the right to do so when certain requirements are not met. *See* 29 U.S.C. §§ 203(m) and 203(t).

52. Restaurants forfeit the tip credit when they require their tipped employees — such as Tokyo Hibachi's servers—to share tips with managers and supervisors. 29 U.S.C. § 203(m)(2)(B).

53. By requiring Plaintiffs to share tips with Chefs, who are paid a salary, classified as exempt, and manage and supervise servers and other employees, Defendants have forfeited their right to utilize the "tip credit" in satisfying their minimum wage obligations to Plaintiffs. As such, Defendants have violated the FLSA's minimum wage mandate by paying Plaintiffs an hourly wage below $7.25 for regular hours worked.

54. Restaurants forfeit the tip credit when they require their tipped employees- such as Tokyo Hibachi's servers—to share tips with other restaurant employees who do not "customarily and regularly receive tips." 29 U.S.C. § 203(m). Federal courts interpreting this

statutory language hold that restaurants lose their right to utilize a "tip credit" when tips are shared with employees such as Tokyo Hibachi's Busboys, Chefs, and Bartenders whose direct customer interaction is minimal.

55. By requiring Plaintiffs to share tips with Busboys, Chefs, and Bartenders, Defendants have forfeited their right to utilize the "tip credit" in satisfying their minimum wage obligations to Plaintiffs. As such, Defendants have violated the FLSA's minimum wage mandate by paying Plaintiffs an hourly wage below $7.25 for regular hours worked.

56. Restaurants may only take the tip credit for employees in an occupation in which the employee qualifies as a "tipped employee." 29 U.S.C. § 203(m). Federal courts interpreting this statutory language also hold that restaurants lose their right to utilize a "tip credit" when their tipped employees such as Tokyo Hibachi's servers spend more than 20% of their shift performing non-tip-producing work.

57. By requiring Plaintiffs to spend more than 20% of their shift performing non-tip-producing work, Defendants have forfeited their right to utilize the "tip credit" in satisfying their minimum wage obligations to Plaintiffs. As such, Defendants have violated the FLSA's minimum wage mandate by paying Plaintiffs an hourly wage below $7.25 for regular hours worked.

58. Restaurants forfeit the tip credit when they attempt to claim a tip credit that exceeds the actual amount of tips received. 29 U.S.C. § 203(m). In other words, where the amount of tips received is not sufficient to make up the difference between the lower tipped hourly rate—like the $2.15 per hour Defendants paid Plaintiffs—and the statutory minimum wage of $7.25 per hour, Defendants must pay sufficient wages to ensure the full statutory minimum wage is paid.

59. When Plaintiffs receive insufficient tips to cover the difference between their lower tipped hourly rate and the statutorily mandated $7.25 per hour minimum wage,

Defendants have attempted to take a tip credit that exceeds the actual amount of tips received and failed to pay sufficient additional wages to cover the difference. As a result, Defendants have forfeited their right to utilize the "tip credit" in satisfying their minimum wage obligations to Plaintiffs. Thus, Defendants have violated the FLSA's minimum wage mandate by paying Plaintiffs an hourly wage below $7.25 for regular hours worked.

60. Defendants also have a policy and practice of requiring servers to clock-out prior to the conclusion of their shift to perform certain work activities without pay as described herein.

61. By requiring servers to work off the clock without pay, Defendants have failed to pay Plaintiffs for all time worked at the statutory minimum wage of $7.25 per hour.

62. In violating the FLSA, Defendants have acted willfully and with reckless disregard of clearly applicable FLSA provisions.

## COUNT II
**VIOLATION OF THE OVERTIME REQUIREMENTS OF THE FLSA**

63. All previous paragraphs are incorporated as though fully set forth herein.

64. Plaintiffs are employees entitled to the FLSA's protections.

65. Defendants are employers covered by the FLSA.

66. The FLSA requires that covered employees receive overtime compensation "not less than one and one-half times" their regular rate of pay for hours over 40 in a workweek. 29 U.S.C. § 207.

67. Employers may take a tip credit and pay tipped employees a lower tipped hourly rate so long as employees receive proper notice of the tip credit and receive $10.88 per hour— *i.e.,* one and one-half times the full $7.25 per hour statutory minimum wage for every hour worked. *See* 29 U.S.C. § 203(m).

68. Defendants pay Plaintiffs a tipped hourly rate and Defendants rely on their tips

to meet the overtime requirements pursuant to the tip credit provision of the FLSA.

69.     Plaintiffs employed by Defendants have worked over 40 hours in a workweek paid at a lower tipped hourly rate.

70.     However, as explained above, Restaurants forfeit the right to rely on the tip credit to satisfy the overtime requirements of the FLSA when certain requirements are not met. *See* 29 U.S.C. §§ 203(m) and 203(t).

71.     Restaurants forfeit the tip credit when they require their tipped employees—such as Tokyo Hibachi's servers—to share tips with managers and supervisors. 29 U.S.C. § 203(m)(2)(B).

72.     By requiring Plaintiffs to share tips with Chefs, who are paid a salary, classified as exempt, and manage and supervise servers and other employees, Defendants have forfeited their right to utilize the "tip credit" in satisfying their overtime wage obligations to Plaintiffs. As such, Defendants have violated the FLSA's overtime wage mandate by paying Plaintiffs an hourly wage below $10.88 for overtime hours worked.

73.     Restaurants forfeit the tip credit when they require their tipped employees—such as Tokyo Hibachi's servers-- to share tips with other restaurant employees who do not "customarily and regularly receive tips." 29 U.S.C. § 203(m). Federal courts interpreting this statutory language hold that restaurants lose their right to utilize a "tip credit" when tips are shared with employees—such as Tokyo Hibachi's Busboys, Chefs, and Bartenders—whose direct customer interaction is minimal.

74.     By requiring Plaintiffs to share tips with Busboys, Chefs, and Bartenders, Defendants have forfeited their right to utilize the "tip credit" in satisfying their overtime wage obligations to Plaintiffs. As such, Defendants have violated the FLSA's overtime wage mandate by paying Plaintiffs an hourly wage below $10.88 for overtime hours worked.

75. Restaurants may only take the tip credit for employees in an occupation in which the employee qualifies as a "tipped employee." 29 U.S.C. § 203(m). Federal courts interpreting this statutory language also hold that restaurants lose their right to utilize a "tip credit" when their tipped employees such as Tokyo Hibachi's servers spend more than 20% of their shift performing non-tip-producing work.

76. By requiring Plaintiffs to spend more than 20% of their shift performing non-tip-producing work, Defendants have forfeited their right to utilize the "tip credit" in satisfying their overtime wage obligations to Plaintiffs. As such, Defendants have violated the FLSA's overtime wage mandate by paying Plaintiffs an hourly wage below $10.88 for overtime hours worked.

77. Restaurants forfeit the tip credit when they attempt to claim a larger tip credit than $5.12 per hour for regular hours (*i.e.*, hours up to 40 in a workweek) and overtime hours *(i.e.,* hours over 40 in a workweek). 29 U.S.C. 203(m)(2). Thus, the minimum permissible hourly cash wage for tipped employees working overtime is $5.76 per hour ($10.88 - $5.12 = $5.76).

78. Defendants paid their servers an hourly overtime rate of less than $5.76 per hour, instead paying one and one-half times the tipped hourly rate for hours up to 40 in a work week.

79. By paying their servers an hourly overtime rate of less than $5.76 per hour, Defendants have attempted to take a tip credit in excess of $5.12 per hour and have forfeited their right to utilize the "tip credit" in satisfying their overtime wage obligations to Plaintiffs. As such, Defendants have violated the FLSA's overtime wage mandate by paying Plaintiffs an hourly wage below $10.88 for overtime hours worked.

80. Restaurants forfeit the tip credit when they attempt to claim a tip credit that exceeds the actual amount of tips received. 29 U.S.C. § 203(m). In other words, where the

amount of tips received is not sufficient to make up the difference between the lower tipped hourly rate and the statutory overtime wage of $10.88 per hour for minimum wage employees, Defendants must pay sufficient wages to ensure the full $10.88 hourly overtime wage is paid.

81. When Plaintiffs receive insufficient tips to cover the difference between their lower tipped hourly rate and the statutorily mandated $10.88 per hour overtime wage, Defendants have attempted to take a tip credit that exceeds the actual amount of tips received and failed to pay sufficient additional wages to cover the difference. As a result, Defendants have forfeited their right to utilize the "tip credit" in satisfying their overtime wage obligations to Plaintiffs. Thus, Defendants have violated the FLSA's overtime wage mandate by paying Plaintiffs an hourly wage below $10.88 for overtime hours worked.

82. Defendants also have a policy and practice of requiring Plaintiffs to clock-out prior to the conclusion of their shift to perform certain work activities as described herein.

83. The time worked off the clock without pay includes hours over 40 in a workweek.

84. By requiring servers to work off the clock without pay for hours over 40 in a workweek, Defendants have failed to pay Plaintiffs for all time worked over 40 hours in a workweek at one and one-half times their regular hourly rate as required under the FLSA.

85. In violating the FLSA, Defendants have acted willfully and with reckless disregard of clearly applicable FLSA provisions.

### COUNT III
### VIOLATION OF THE MINIMUM WAGE REQUIRMENTS OF THE KWHA

86. All previous paragraphs are incorporated as though fully set forth herein.

87. Defendants are employers covered by the KWHA.

88. The KWHA entitles employees to a minimum hourly wage of $7.25 for every hour worked. KRS 337.275.

89. While restaurants may utilize a "tip credit" to satisfy their minimum wage obligations to tipped employees, they forfeit the right to do so when certain requirements are not met. *See* KRS 337.010(2)(d), 337.275(2); 803 KAR 1:080 § 3.

90. The KWHA prohibits employers from requiring employees to remit any tips to the employer *(i.e.,* requirements that employees share tips with the employer) and from requiring employees to participate in a tip pool in which they must remit their tips for distribution among other employees *(i.e.,* mandatory tip pools). KRS 337.065.

91. Restaurants forfeit the tip credit when they require their tipped employees such as Tokyo Hibachi's servers—to share tips with the employer or any other restaurant employees. *See* 803 KAR 1:080 §3.

92. By requiring Plaintiffs to share tips with other employees, Defendants have forfeited their right to utilize the "tip credit" in satisfying their minimum wage obligations to Plaintiffs. As such, Defendants have violated the KWHA's minimum wage mandate by paying Plaintiffs an hourly wage below $7.25 for regular hours worked.

93. By requiring Plaintiffs to share tips with Chefs, who are paid a salary, classified as exempt, and manage and supervise servers and other employees, Defendants have required them to remit tips to their employer and forfeited their right to utilize the "tip credit" in satisfying their overtime wage obligations to Plaintiffs. As such, Defendants have violated the KWHA's minimum wage mandate by paying Plaintiffs an hourly wage below $7.25 for regular hours worked.

94. Restaurants also forfeit the tip credit when they require their tipped employees - such as Tokyo Hibachi's servers—to share tips with other restaurant employees who do not customarily and regularly receive tips. Thus, restaurants lose their right to utilize a "tip credit" when tips are shared with employees such as Tokyo Hibachi's Busboys, Chefs, and Bartenders —whose direct customer interaction is minimal.

13

95. By requiring Plaintiffs to share tips with Busboys, Chefs, and Bartenders, Defendants have forfeited their right to utilize the "tip credit" in satisfying their minimum wage obligations to Plaintiffs. As such, Defendants have violated the KWHA's minimum wage mandate by paying Plaintiffs an hourly wage below $7.25 for regular hours worked.

96. Restaurants may only take the tip credit for employees in an occupation in which the employee qualifies as a "tipped employee." ICRS 337.010(2)(c) and (d); KRS 337.275; 803 KAR 1:080 § 3. Thus, restaurants lose their right to utilize a "tip credit" when their tipped employees—such as Tokyo Hibachi's servers spend more than 20% of their shift performing non-tip-producing work.

97. By requiring Plaintiffs to spend more than 20% of their shift performing non-tip-producing work, Defendants have forfeited their right to utilize the "tip credit" in satisfying their minimum wage obligations to Plaintiffs. As such, Defendants have violated the KWHA's minimum wage mandate by paying Plaintiffs an hourly wage below $7.25 for regular hours worked.

98. Restaurants forfeit the tip credit when they attempt to claim a tip credit that exceeds the actual amount of tips received. KRS 337.275; 803 KAR 1:080 § 3. In other words, where the amount of tips received is not sufficient to make up the difference between the lower tipped hourly rate —like the $2.15 per hour Defendants paid Plaintiffs and the statutory minimum wage of $7.25 per hour, Defendants must pay sufficient wages to ensure the full statutory minimum wage is paid.

99. When Plaintiffs receive insufficient tips to cover the difference between their lower tipped hourly rate and the statutorily mandated $7.25 per hour minimum wage, Defendants have attempted to take a tip credit that exceeds the actual amount of tips received and failed to pay sufficient additional wages to cover the difference. As a result, Defendants have forfeited their right to utilize the "tip credit" in satisfying their minimum wage obligations

14

to Plaintiffs. Thus, Defendants have violated the KWHA's minimum wage mandate by paying Plaintiffs an hourly wage below $7.25 for regular hours worked.

100. Defendants also have a policy and practice of requiring servers to clock-out prior to the conclusion of their shift to perform certain work activities without pay as described herein.

101. By requiring servers to work off the clock without pay, Defendants have failed to pay Plaintiffs for all time worked at the statutory minimum wage of S7.25 per hour.

102. In violating the KWHA, Defendants have acted willfully and with reckless disregard of clearly applicable KWHA provisions.

## COUNT IV
## VIOLATION OF THE OVERTIME REQUIRMENTS OF THE KWHA

103. All previous paragraphs are incorporated as though fully set forth herein.

104. Plaintiffs are employees entitled to the KWHA's protections.

105. Defendants are employers covered by the KWHA.

106. The KWHA requires that covered employees receive overtime compensation "not less than one and one-half times" their regular rate of pay for hours over 40 in a workweek. KRS 337.285.

107. Employers may take a tip credit and pay tipped employees a lower tipped hourly rate so long as employees receive at least SI0.88 per hour *i.e.*, one and one-half times the full $7.25 per hour statutory minimum wage for every hour worked. *See* KRS 337.285; 803 KAR 1:080 §3.

108. Defendants paid Plaintiffs a tipped hourly rate and Defendants rely on their tips to meet the overtime requirements pursuant to the tip credit provision of the KWHA.

109. Plaintiffs employed by Defendants have worked over 40 hours in a workweek paid at a lower tipped hourly rate.

110. However, as explained above, Restaurants forfeit the right to rely on the tip credit to satisfy the overtime requirements of the KWHA when certain requirements are not met. *See* KRS 337.010(2)(d), 337.275(2); 803 KAR 1:080 § 3.

111. The KWHA prohibits employers from requiring employers to remit any tips to the employer *(i.e.,* requirements that employees share tips with the employer) and from requiring employees to participate in a tip pool in which they must remit their tips for distribution among other employees *(i.e.,* mandatory tip pools). KRS 337.065.

112. Restaurants forfeit the tip credit when they require their tipped employees such as Tokyo Hibachi's servers to share tips with the employer or any other restaurant employees. *See* 803 KAR 1:080 §3.

113. By requiring Plaintiffs to share tips with other employees, Defendants have forfeited their right to utilize the "tip credit" in satisfying their overtime wage obligations to Plaintiffs. As such, Defendants have violated the KWHA's overtime wage mandate by paying Plaintiffs an hourly wage below $10.88 for overtime hours worked.

114. By requiring Plaintiffs to share tips with Chefs, who are paid a salary, classified as exempt, and manage and supervise servers and other employees, Defendants have required them to remit tips to their employer and forfeited their right to utilize the "tip credit" in satisfying their overtime wage obligations to Plaintiffs. As such, Defendants have violated the KWHA's overtime wage mandate by paying Plaintiffs an hourly wage below $10.88 for overtime hours worked.

115. Restaurants also forfeit the tip credit when they require their tipped employees— such as Tokyo Hibachi's servers—to share tips with other restaurant employees who do not customarily and regularly receive tips. Thus, restaurants lose their right to utilize a "tip credit" when tips are shared with employees such as Tokyo Hibachi's Busboys, Chefs, and Bartenders—whose direct customer interaction is minimal.

116. By requiring Plaintiffs to share tips with Busboys, Chefs, and Bartenders, Defendants have forfeited their right to utilize the "tip credit" in satisfying their overtime wage obligations to Plaintiffs. As such, Defendants have violated the KWHA's overtime wage mandate by paying Plaintiffs an hourly wage below $10.88 for overtime hours worked.

117. Restaurants may only take the tip credit for employees in an occupation in which the employee qualifies as a "tipped employee." KRS 337.010(2)(c) and (d); KRS 337.275; 803 KAR 1:080 § 3. Thus, restaurants lose their right to utilize a "tip credit" when their tipped employees—such as Tokyo Hibachi's servers—spend more than 20% of their shift performing non-tip-producing work.

118. By requiring Plaintiffs to spend more than 20% of their shift performing non-tip-producing work, Defendants have forfeited their right to utilize the "tip credit" in satisfying their overtime wage obligations to Plaintiffs. As such, Defendants have violated the FLSA's overtime wage mandate by paying Plaintiffs an hourly wage below $10.88 for overtime hours worked.

119. Restaurants forfeit the tip credit when they attempt to claim a larger tip credit than $5.12 per hour for regular hours *(i.e.,* hours up to 40 in a workweek) and overtime hours *(i.e.,* hours over 40 in a workweek). KRS 337.275(2) (incorporating 29U.S.C. § 203). Thus, the minimum permissible hourly cash wage for tipped employees working overtime is $5.76 per hour ($10.88-$5.12 = $5.76).

120. Defendants paid their servers an hourly overtime rate of less than $5.76 per hour, instead paying one and one-half times the tipped hourly rate for hours up to 40 in a work week.

121. By paying their servers an hourly overtime rate of less than $5.76 per hour, Defendants have attempted to take a tip credit in excess of $5.12 per hour and have forfeited their right to utilize the "tip credit" in satisfying their overtime wage obligations to Plaintiffs. As

such, Defendants have violated the KWHA's overtime wage mandate by paying Plaintiffs an hourly wage below $10.88 for overtime hours worked.

122. Restaurants forfeit the tip credit when they attempt to claim a tip credit that exceeds the actual amount of tips received. KRS 337.275; 803 KAR 1:080 § 3. In other words, where the amount of tips received is not sufficient to make up the difference between the lower tipped hourly rate and the statutory overtime wage of $10.88 per hour for minimum wage employees, Defendants must pay sufficient wages to ensure the full $10.88 hourly overtime wage is paid.

123. When Plaintiffs receive insufficient tips to cover the difference between their lower tipped hourly rate and the statutorily mandated $10.88 per hour overtime wage, Defendants have attempted to take a tip credit that exceeds the actual amount of tips received and failed to pay sufficient additional wages to cover the difference. As a result, Defendants have forfeited their right to utilize the "tip credit" in satisfying their overtime wage obligations to Plaintiffs. Thus, Defendants have violated the KWHA's overtime wage mandate by paying Plaintiffs an hourly wage below $10.88 for overtime hours worked.

124. Defendants also have a policy and practice of requiring Plaintiffs to clock-out prior to the conclusion of their shift to perform certain work activities as described herein.

125. The time worked off the clock without pay includes hours over 40 in a workweek.

126. By requiring servers to work off the clock without pay for hours over 40 in a workweek, Defendants have failed to pay Plaintiffs for all time worked over 40 hours in a workweek at one and one-half times their regular hourly rate as required under the KWHA.

127. In violating the KWHA, Defendants have acted willfully and with reckless disregard of clearly applicable KWHA provisions.

## COUNT V
## RETALIATION

128. All previous paragraphs are incorporated as though fully set forth herein.

129. On December 21, 2020, Defendants gave Plaintiff Natero the option of being terminated or withdrawing her claim for unpaid minimum and overtime wages.

130. Defendants violated KRS 344.280 of the Kentucky Civil Rights Act ("KCRA") by retaliating against Plaintiff Natero for complaining about unpaid minimum and overtime wages to which she is entitled, with such practices constituting an unlawful employment practice under 29 U.S.C. § 215(a)(3) of the FLSA.

131. Defendants took tangible adverse employment actions against Plaintiff Natero, by and through the actions of their agents, when, in retaliation for her complaints, they terminated/demoted her and reduced her hours and wages/compensation.

132. A legitimate, nondiscriminatory and/or nonretaliatory reason does not exist to justify Defendants' intentional, disparate, and retaliatory treatment of Plaintiff Natero.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

a. A finding that Defendants have violated the FLSA and KWHA;

b. A finding that Defendants' FLSA and KWHA violations are willful;

c. A judgment against Defendants and in favor of the Plaintiffs for compensation for all unpaid and underpaid wages that Defendants have failed and refused to pay in violation of the FLSA and KWHA;

d. A finding that Defendants have violated the KCRA;

e. A judgment against Defendants and in favor of Plaintiff Natero for the damages sustained as the result of Defendants retaliatory treatment.

f. Prejudgment interest to the fullest extent permitted under the law;

  g.  Liquidated damages to the fullest extent permitted under the FLSA and KWHA.

  h.  Litigation costs, expenses, and Plaintiffs' attorneys' fees to the fullest extent permitted under the FLSA, KWHA, KCRA, and the Federal Rules of Civil Procedure;

  i.  Punitive damages; and

  j.  Such other and further relief as this Court deems just and proper in equity and under the law.

### VI. JURY DEMAND

Plaintiffs demand a jury as to all claims so triable.

Date: January 5, 2021.

        **Respectfully submitted,**

        BOEHL STOPHER & GRAVES

        _____/s/ Edwin A. Jones_____
        Edwin A. Jones, KY Bar No. 83477
        410 Broadway
        Paducah, Kentucky 42001
        270.442.4369
        270.442.4689 facsimile
        ejones@bsgpad.com

        *Counsel for Plaintiffs*